IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

VESTA FIRE INSURANCE                    §
CORPORATION,                            §
                                        §
        Plaintiff,                      §
                                        §
v.                                      §         CIVIL ACTION NO.
                                        §         3:05-CV-2404-P
EMPLOYERS REINSURANCE                   §
CORPORATION,                            §
                                        §
        Defendant.                      §

## MEMORANDUM OPINION AND ORDER

Now before the Court is Defendant Employers Reinsurance Corporation's Motion to Compel

Arbitration, filed December 7, 2005, and Plaintiff Vesta Fire Insurance Corporation's Motion for

Partial Summary Judgment and Motion to Stay Arbitration, both of which were filed on December

29, 2005. Also on December 29, 2005, Plaintiff filed its response to Defendant's Motion to Compel

Arbitration, to which Defendant filed its reply on January 11, 2006. Defendant filed both of its

responses to Plaintiff's Motion for Partial Summary Judgment and Motion to Stay Arbitration on

January 18, 2006. Plaintiff filed its two replies to these latter motions on February 2, 2006. For the

reasons stated below, the Court hereby GRANTS Defendant's Motion to Compel Arbitration and

DENIES Plaintiff's Motion to Stay arbitration. Plaintiff's Motion for Partial Summary Judgement

is accordingly DENIED as MOOT.

## BACKGROUND

On June 29, 1999, Vesta Insurance Group, Inc. ("VIG"), Vesta Management Corporation of

Texas ("Vesta Management") and Employers Reinsurance Corporation ("Defendant" or "ERC")

entered into an Acquisition Agreement whereby ERC acquired the right and authority to the exclusive management of Vesta County Mutual Insurance Company ("Vesta County"). The Acquisition Agreement did not contain an arbitration provision and was to be governed by Texas law (Acquisition Agreement, ¶ 12.6). Vesta Fire Insurance Corporation ("Plaintiff" or "Vesta Fire") was not a party to this contract. However, as a closing condition to the sale, the Acquisition Agreement contemplated a Loss Portfolio Transfer Agreement ("LPTA") between ERC and Vesta Fire (Acquisition Agreement, ¶ 7.1.8).[1] Under the LPTA, which ERC and Vesta Fire executed on September 10, 1999, Vesta Fire transferred a portion of its reinsurance business to ERC. The LPTA contained an arbitration provision whereby the parties agreed to submit to arbitration any dispute arising under the LPTA (LTPA, ¶ 7.1). The LPTA further provided, "This Agreement shall be interpreted under the laws of Texas and the arbitration shall be governed by the Texas General Arbitration Act" (LTPA, ¶ 7.6). Moreover, both ERC and Vesta Fire stipulate that Texas law and the Texas General Arbitration Act ("TGAA") govern their current arbitration dispute.

Because certain accounting information necessary for calculating the value of Vesta County, the transferred asset, would not be available until after the signing of the Acquisition Agreement, the Acquisition Agreement provided that all post-closing adjustments for such amounts be made "on or before March 1, 2000" (Acquisition Agreement, ¶ 10.9). Pursuant to this provision, ERC notified Vesta Fire on February 29, 2000 regarding accounting issues with respect to the LPTA.[2] In this

---

[1] The LPTA was attached to the Acquisition Agreement as Exhibit 7.1.8.

[2] ERC incorrectly states in its February 29, 2000 letter that Vesta Fire was a party to the Acquisition Agreement. However, the parties seem to agree that the post closing adjustment deadline of March 1, 2000 laid out in the Acquisition Agreement also provided a notice deadline as between them for accounting issues.

letter, ERC pointed out a number of instances in which it believed that Vesta Fire had overstated the value of the transferred asset (Pl.'s App. 59–60). Although ERC calculated an actual dollar amount for each alleged overstatement, ERC indicated that it needed additional information before it could fully compute the precise accounting discrepancy. The stated purpose of the letter was to preserve ERC's rights under the Acquisition Agreement.

On August 17, 2001, a year and a half after its first demand letter, ERC sent another, more specific demand letter to Vesta Fire regarding the alleged overstatement under the LPTA. In this letter, ERC calculated its total loss from Vesta Fire's alleged breach to be $3,015,823. ERC demanded that Vesta Fire pay this amount by September 24, 2001. Vesta Fire has yet to pay this amount.

Realizing that Vesta Fire was not going to pay the amount demanded in the August 17, 2001 letter, ERC began to offset amounts it owed Vesta Fired under three unrelated contracts. To date, ERC has offset a total of $2,074,287. On July 11, 2005, Vesta Fire notified ERC of its demand to arbitrate ERC's offsetting practices based on the arbitration provisions in these three unrelated contracts. The parties are currently arbitrating that dispute.

On August 31, 2005, more than four years after ERC's second demand letter, ERC notified Vesta Fire of its intent to arbitrate its alleged loss under the LPTA. Even though ERC had offset over two million dollars under the three unrelated contracts, this amount was not sufficient to cover the damages allegedly caused by Vesta Fire's breach.[3] Pursuant to the terms of the arbitration agreement in the LPTA, on September 9, 2005, ERC communicated to Vesta Fire its choice of an

---

[3] In the August 31, 2005 letter, ERC states that it intends to seek a declaration from the arbitrator that Vesta Fire owes ERC $2,576,359 under the LPTA plus interest and attorneys fees.

arbitrator. On October 14, 2005, Vesta Fire reciprocated by notifying ERC that it had also appointed an arbitrator for the LPTA dispute.  Although the LPTA dispute seemed to be headed toward arbitration, Vesta Fire filed suit in state court on November 7, 2005, less than a month after it had appointed an arbitrator for the LPTA dispute, seeking a declaration that ERC's claims for damages arising out of the LPTA are barred by the statute of limitations and that ERC is therefore prevented from bringing any such claim in arbitration or any other judicial proceeding.  A month later, ERC removed the action to federal court on the basis of diversity jurisdiction.  That same day, December 7, 2005, ERC filed its Motion to Compel Arbitration that, along with Vesta Fire's two motions, is now before the Court.

## DISCUSSION

"A party attempting to compel arbitration must first establish that the dispute in question falls within the scope of a valid arbitration agreement." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 171.021 (Vernon 2005).  "If the other party resists arbitration, the trial court must determine whether a valid agreement to arbitrate exists."  *Id.*  "If the trial court finds a valid agreement, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration."  *Id.*  The party opposing arbitration may carry this burden by showing "that the Agreement was procured in an unconscionable manner, induced or procured by fraud or duress, or that [the party moving for arbitration] had waived arbitration under the Agreement." *In re Oakwood Mobile Homes*, Inc., 987 S.W.2d 571, 573 (Tex. 1999).

**1. The issue of whether conditions precedent are satisfied is for the arbitrator to decide.**

Here, both parties acknowledge that the dispute in question falls within the scope of the arbitration agreement. Vesta Fire, however, argues that the Court should deny the motion to compel because ERC allegedly failed to fulfill a condition precedent to arbitration. Specifically, Vesta Fire claims that ERC failed to comply with the statute of limitations on the underlying claims. The Court, however, finds that the issue of whether conditions precedent to arbitration have been met is for the arbitrator to decide.

As an initial matter, the Court does not think that compliance with the applicable limitations period on the underlying claims is a condition precedent to the right to arbitrate. "A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992). "In order to make performance specifically conditional, a term such as 'if', 'provided that', 'on condition that', or some similar phrase of conditional language must normally be included" in the parties' agreement. *Criswell v. European Crossroads Shopping Center, Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990). In the absence of such limiting language, the determination of whether a condition precedent exists "must be gathered from the contract as a whole and from the intent of the parties." *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976).

In this case, there is no language in the agreement manifesting an intent to establish the statute of limitations as a condition precedent to arbitration. The agreement simply provides that:

> As a condition precedent to any right of action hereunder, in the event of any dispute or difference of opinion hereafter arising among any of the parties to this Agreement with respect to this Agreement or with respect to any such party's obligations hereunder, it is hereby mutually agreed that such dispute or difference of opinion

shall be submitted to arbitration.

(LTPA, ¶ 7.1). While this clause clearly establishes a demand for arbitration as a condition precedent to filing a civil action, neither this passage nor any other language in the agreement indicates that the parties intended to establish compliance with the applicable limitations period on the underlying claim as a condition precedent to arbitration. Moreover, Vesta Fire has offered no evidence suggesting that this was the parties' intent.

Vesta Fire analogizes this case to *D. Wilson Constr. v. Cris Equip. Co.*, 988 S.W.2d 388 (Tex. App. – Corpus Christi 1999). In that case, however, the agreement between the parties contained a clause expressly imposing a time limit upon bringing an arbitration demand and the court had to construe language in the agreement in order to determine whether a cause of action accrued. *D. Wilson Constr.*, 988 S.W.2d at 396. Here, nothing in the agreement indicates that the parties intended to use the statute of limitations on the underlying claims as a time limit for a demand to arbitrate.

Nevertheless, under Tex. Civ. Prac. & Rem. Code Ann. § 171.021, the arbitrator, rather than the court, is charged with deciding whether compliance with the statute of limitations is a condition precedent and, if so, whether it has been satisfied. The Act provides that:

    (a) A court shall order the parties to arbitrate on application of a party showing:
        (1) an agreement to arbitrate; and
        (2) the opposing party's refusal to arbitrate.

    (b) If a party opposing an application made under Subsection (a) denies the existence of the agreement, the court shall summarily determine that issue. The court shall order the arbitration if it finds for the party that made the application. If the court does not find for that party, the court shall deny the application.

Tex. Civ. Prac. & Rem. Code Ann. § 171.021 (Vernon 2005). Texas courts have not definitely

established whether § 171.021 assigns responsibility for determining fulfillment of conditions precedent to the courts or the arbitrator. The Texas Supreme Court has not addressed the issue, and the Texas appellate courts that have are divided. *Compare City of Lubbock v. Hancock*, 940 S.W.2d 123 (Tex. App.—Amarillo 1996) (finding that the issue is for the arbitrator) *and Valero Energy Corp. v. Tech Pipeline Co.*, 2 S.W.3d 547 (Tex. App.—Houston [14th Dist.] 1999) (same) *with D. Wilson Constr.* 988 S.W.2d 388 (determining that the issue is for the courts). Of these opinions, the Court is most persuaded by *City of Lubbock v. Hancock*. The *City of Lubbock* court noted that the TGAA itself directs that it be construed with an eye to promoting uniformity.[4] *City of Lubbock*, 940 S.W.2d at 125 (citing Tex. Civ. Prac. & Rem. Code Ann. § 171.019 (Vernon Supp. 1996) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 171.003 (Vernon 2005)). In this respect, the court looked to U.S. Supreme Court case law holding that issues of procedural arbitrability are for the arbitrator to decide. *Id.* at 126 (discussing *John Wiley & Sons, Inc. v. Livingston*, 317 U.S. 543 (1964)). The court also noted that the TGAA is based on the Uniform Arbitration Act and that most other jurisdictions adopting the Uniform Act have found that this issue is for the arbitrator. *Id.* Furthermore, the court observed that the language of the Texas statute "addresses only the existence and scope of the agreement to arbitrate, *i.e.*, questions of substantive arbitrability" and "does not require or authorize a court to address questions of procedural arbitrability such as the satisfaction of conditions precedent to a right of arbitration." *Id.* at 127. For these same reasons, this Court concludes that, under Tex. Civ. Prac. & Rem. Code Ann. § 171.021, the issue of whether conditions precedent to arbitration are satisfied is for the arbitrator to decide.

---

[4] In fact, the Texas Supreme Court just recently reemphasized "the importance of keeping federal and state law uniform so that arbitrability does not depend on where one seeks to compel it." *In re Vesta Ins. Group, Inc.*, Nos. 04-0141, 04-0156, 04-0157, 04-0165, 04-0179, 2006 Tex. LEXIS 220, at *7 (Tex. Mar. 17, 2006).

This case provides a good example of why such issues should be determined by the arbitrator. As noted above, Vesta Fire argues that a condition precedent to arbitration was compliance with the statute of limitations on the underlying claim. However, whether the claims are barred by limitations has nothing to do with defenses to the enforcement or validity of the arbitration agreement. This is a defense to the underlying claim, not to the validity of the agreement. As such, it makes sense that Tex. Civ. Prac. & Rem. Code Ann. § 171.021 assigns the resolution of this issue to the arbitrator.

### 2. ERC has not waived its right to arbitrate.

As a separate defense, Vesta Fire argues that ERC waived its right to arbitration by delaying its request to arbitrate. "The issue of waiver of arbitration is one that is consistently addressed by Texas and federal courts and not reserved for an arbitrator." *In re Certain Underwriters at Lloyd's*, 18 S.W.3d 867, 871 (Tex. App.—Beaumont 2000) (citing *In re Oakwood*, 987 S.W.2d 571, and *In re Bruce Terminix Co.*, 988 S.W.2d 702 (Tex. 1998)). "Waiver may be found when it is shown that a party acted inconsistently with its right to arbitrate and such actions prejudiced the other party." *In re Oakwood*, 987 S.W.2d at 574. Here, Vesta Fire presents no evidence that ERC acted inconsistently with its right to arbitration. In addition, "[a] party does not waive a right to arbitration merely by delay; instead, the party urging waiver must establish that any delay resulted in prejudice." *Prudential Sec. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995). Vesta Fire fails to identify any prejudice resulting from ERC's delay in demanding arbitration. For these reasons, the Court concludes that ERC has not waived its right to demand arbitration.

## CONCLUSION

Based on the Court's analysis above, Defendant's Motion to Compel Arbitration is GRANTED and Plaintiff's Motion to Stay arbitration is DENIED.  Plaintiff's Motion for Partial Summary Judgement is accordingly DENIED as MOOT.

**IT IS SO ORDERED.**

Signed this 31st day of May 2006.


_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE